**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1337
_____

RYAN CASTANEIRA,
                                        Appellant

v.

MICHAEL POTTEIGER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-13-cv-03108)
District Judge: James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 10, 2015

Before:  CHAGARES, JORDAN and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 17, 2015)
_____

OPINION*
_____

PER CURIAM

        Ryan Castaneira appeals from an order of the District Court granting judgment on

the pleadings to Michael Potteiger, Chairman of the Pennsylvania Board of Probation &

Parole.  For the reasons that follow, we will affirm.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Castaneira was convicted in the State of Georgia of four sex offenses involving the solicitation of a minor for indecent purposes via a computer, and sentenced to a term of imprisonment of 10 years, to be followed by 20 years of probation. By virtue of his conviction, Castaneira is subject to Ga. Code Ann. § 42-1-16, which provides that "[a]ny individual who committed an act between July 1, 2006, and June 30, 2008, for which such individual is required to register shall not reside within 1,000 feet of any child care facility, church, school, or area where minors congregate." Id. In February, 2013, Georgia granted Castaneira parole and imposed the statutorily-mandated special condition of supervision prohibiting him from residing within 1,000 feet of a church, school, child care facility or areas where minors congregate.

On April 10, 2013, Castaneira applied to transfer his parole supervision from Georgia to Pennsylvania pursuant to the Interstate Compact for Adult Offender Supervision. As part of that application process, he was required to agree to a list of special conditions of parole, including the 1,000 feet residency restriction. His initial request to reside at a specific address in Harrisburg, Pennsylvania was denied by Pennsylvania's Parole Board because the residence was within 1,000 feet of a child care facility, school, church or other place where minors congregate. Castaneira submitted a second application to reside at an address in Camp Hill, Pennsylvania. The Parole Board denied this request because the proposed residence was within 500 feet of a church and school. Castaneira was advised that Georgia parole authorities would not remove the 1,000 feet residency restriction.

Castaneira then filed a civil rights action, 42 U.S.C. § 1983, in the United States District Court, alleging a violation of his rights under the Interstate Compact, and his

constitutional right to free travel and equal protection of the laws, which was transferred to the Middle District of Pennsylvania. Castaneira, who is from Pennsylvania, specifically argued that he could not reside at his "primary residence" in Camp Hill because of the 1,000 feet residency restriction. Castaneira sought declaratory and injunctive relief. The Parole Board moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."). The Parole Board argued that Congress did not create an enforceable right for parolees under the Interstate Compact, and that Castaneira's Fourteenth Amendment Due Process and Equal Protection claims failed as a matter of law. With respect to Castaneira's equal protection argument, the Parole Board argued that Castaneira is not similarly situated to Pennsylvania offenders because he is specifically subject to conditions insisted upon by parole authorities in Georgia.

Following the denial of his third request -- to reside at another address in Harrisburg, Pennsylvania -- Castaneira moved for an emergency temporary restraining order. In seeking an order restraining the Parole Board from denying his third request, Castaneira submitted Exhibits "X," "Y," "Z" and "AA," which he created by identifying, through Pennsylvania's Megan's Law website, four Pennsylvania sex offenders who were living within 1,000 feet, according to Google Maps, of elementary schools or other facilities where minors congregate. Castaneira argued that his exhibits showed that he was being treated differently from in-state parolee sex offenders.

In an order entered on September 22, 2014, the District Court granted judgment on the pleadings to the Parole Board. The Court reasoned that Pennsylvania and Georgia

3

have adopted the Interstate Compact, and it provides offenders the opportunity to transfer their parole supervision to the community where they have family, confirmed employment, specialized treatment programs, and/or educational or vocational opportunities; 61 Pa. Cons. Stat. Ann. § 7112; Ga. Code Ann. § 42-9-81. But, in Doe v. Pa. Bd. of Probation & Parole, 513 F.3d 95, 104 (3d Cir. 2008), we held that, although the Interstate Compact creates rights for the various states who are signatories to it, it does not create rights for parolees. Therefore, parolees like Castaneira do not have a private right of action under § 1983 to enforce the provisions of it.

Next, the District Court noted Castaneira's argument that his request to transfer parole from Georgia to Pennsylvania implicated his fundamental right to travel - a right guaranteed by the Due Process Clause, but observed that individuals who have committed crimes do not have an unqualified right to interstate travel. A State, for example, may prevent a citizen who has been convicted of a crime from leaving, see Jones v. Helms, 452 U.S. 412, 419 (1981), and, even if a person is not currently incarcerated, that person's criminal conduct "necessarily qualified his right" to interstate travel, id. at 421. Restrictions to a particular community or state, as well as restrictions on travel or movement, are standard conditions of parole. See Morrissey v. Brewer, 408 U.S. 471, 478 (1972). Because Georgia, through the exercise of its police power, was authorized to impose the special condition of parole in Castaneira's case, see United States v. Knights, 534 U.S. 112, 119 (2001), and because Castaneira, as a parolee does not enjoy an absolute right to travel, his substantive due process claim failed as a matter of law.

4

Last, the District Court rejected as meritless Castaneira's equal protection argument. The Court held that Castaneira was not similarly situated to Pennsylvania offenders because Georgia, not Pennsylvania, imposed the special condition in his case. The Court considered Castaneira's argument that our decision in Doe supported a determination that his right to equal protection had been violated, but held that Castaneira's circumstances could be distinguished from those of the plaintiff in Doe.

Castaneira moved for reconsideration of the District Court's judgment, Fed. R. Civ. Pro. 59(e), arguing that the Court overlooked his request for declaratory relief. In an order entered on January 5, 2015, the District Court denied the motion, holding that, because the Interstate Compact does not confer enforceable rights on parolees, no right existed for the Court to award declaratory relief.

Castaneira appeals. We have jurisdiction under 28 U.S.C. § 1291. He argues that the District Court misunderstood his argument, and that his real contention is that Interstate Compact Rule 3.101 on mandatory transfers, as well as Rules 4.101 and 4.103, require Pennsylvania to disregard Georgia's special parole conditions; that his case cannot be distinguished from Doe, 513 F.3d 95; and that the District Court did not give sufficient weight to his Exhibits "X," "Y," "Z" and " AA, which he argues show that he is not being treated the same as in-state offenders convicted of similar crimes.

We will affirm. Our review of a District Court's order granting judgment on the pleadings is plenary. Sikirica v. Nationwide Insurance Co., 416 F.3d 214, 219 (3d Cir. 2005). Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Id. The Court views "the facts presented in the pleadings

5

and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Id.

As a threshold matter, we note that Castaneira now resides at an address separate from any of those identified in his applications. The Parole Board has noted in its brief on appeal that the matter is arguably moot by virtue of the transfer, but that it appears that Castaneira may be continuing to press an argument that the 1,000 feet residency restriction cannot be enforced now that his case has been transferred. Castaneira argues that his appeal is not moot, and we agree because there is no indication of any change in the Pennsylvania Parole Board's decision to enforce the 1,000 feet residency restriction. We thus remain able to fashion meaningful relief should we decide it is warranted. See Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1246 (3d Cir. 1996).

The District Court properly determined that Castaneira does not have an enforceable right under the Interstate Compact, and that his substantive due process claim fails as a matter of law. We specifically reject as meritless Castaneira's argument that Rules 3.101, 4.101 and 4.103, see http://www.interstatecompact.org, create an enforceable right in his case. The right to enforce the Interstate Compact rules belongs to Pennsylvania and Georgia, not to Castaneira, Doe, 513 F.3d at 105.

We turn then to Castaneira's Equal Protection argument. The 1,000 feet residency restriction is a condition of parole mandated by Georgia statute, which Georgia parole authorities have declined to remove and which Pennsylvania has decided to enforce.[1] In

---

[1] Rule 401.3 specifically governs "Special Conditions," and the imposition of them by the sending and receiving states, as follows:

6

applying for the transfer, Castaneira agreed to the condition, but then when his specific request was denied, he contended that the Equal Protection Clause required Pennsylvania to forgo enforcing the 1,000 feet residency restriction because enforcing it would mean that he would not be treated the same as in-state parolee sex offenders. He argued that the District Court erred in concluding that he is not similarly situated to Pennsylvania offenders on the sole ground that he was convicted and sentenced in Georgia.

Under the Fourteenth Amendment, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). The threshold question is thus whether Castaneira and in-state parolee sex offenders, though perhaps treated differently, are in fact similarly situated in the first place. Castaneira reads the District

> (a) At the time of acceptance or during the term of supervision, the compact administrator or supervising authority in the receiving state may impose a special condition on an offender transferred under the interstate compact if that special condition would have been imposed on the offender if sentence had been imposed in the receiving state.
> (b) A receiving state shall notify a sending state that it intends to impose or has imposed a special condition on the offender, the nature of the special condition, and the purpose.
> (c) A sending state shall inform the receiving state of any special conditions to which the offender is subject at the time the request for transfer is made or at any time thereafter.
> (d) A receiving state that is unable to enforce a special condition imposed in the sending state shall notify the sending state of its inability to enforce a special condition at the time of request for transfer of supervision is made.

The Parole Board argues in its brief that Pennsylvania is required to supervise cases transferred from other states in accordance with Interstate Compact rules and the conditions placed on offenders by the sending state, but it also acknowledges that disputes arise and when they do a "compacting state's options to resolve disputes run the gamut from informal communication to judicial enforcement in federal district court." Appellee's Brief at 10 (citing Interstate Compact Rules 6.101-6.104).

Court's decision too narrowly. Persons are "similarly situated" for purposes of an equal protection claim when "they are alike in *all* relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis added). Castaneira is (a) from a sending state that has insisted on the enforcement of a certain restriction; and (b) the sending state's insistence is based on a statutory mandate. Castaneira has failed to persuade us that, given these two factors, he is similarly situated to in-state parolee sex offenders.[2]

Castaneira also relies on our decision in Doe. In Doe, 513 F.3d at 105, we held that a version of Pennsylvania's Megan's Law violated an out-of-state offender's equal protection rights, because all out-of-state offenders convicted of sex offenses who transferred supervision to Pennsylvania were subject to community notification. By contrast, an individual who was convicted of the same offense in Pennsylvania would be subject to community notification only if, after a civil hearing, he had been designated a "sexually violent predator." We concluded that the law violated equal protection because subjecting out-of-state sex offenders to community notification without providing equivalent procedural safeguards as were given to in-state sex offenders was not rationally related to the interest of protecting citizens from sexually violent predators. Id. at 112. We agree with the District Court that Doe can be distinguished. Doe did not concern the "similarly situated" issue presented here, and did not concern a sending state's demand that a particular restriction be enforced, or a sending state's statutory mandate.

---

[2] For this reason, Castaneira's Exhibits "X," "Y," "Z" and "AA" are not relevant.

For the foregoing reasons, we will affirm the order of the District Court granting judgment on the pleadings to the Chairman of the Parole Board.